CAROL D. MEIER
61 Rudgear Drive
Walnut Creek, CA 94596
(925) 580-8868
Debtor Pro Se



FILED
SEP 2 3 2020
UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Re: **CAROL D. MEIER,**<br>        Debtor, | **CASE NO.: 20-41288**<br>**Chapt 13**<br>**Judge William J. Lafferty**<br><br>**OBJECTION TO PROOF OF**<br>**CLAIM #3 BY U.S. BANK, N.A., AS**<br>**LEGAL TITLE TRUSTEE** |

I, Carol D. Meier, hereby object to the Proof of Claim #3 by U.S. Bank, N.A., as Legal Title Trustee.

I have attached a true and correct copy of the property at 61 Rudgear Dr., Walnut Creek, CA Loan Analysis 2006 to 2020, with exhibits.

The following points are worthy of special note. Downey Savings securitized this loan. The loan was securitized at the time of origination. After that time, Downey Savings went under and was taken over by the FDIC. The agreement that U.S. Bank constantly refers to as proof of what they purchased from the FDIC refers to a Schedule A, the schedule of all Notes. In 10 years, US Bank has failed to provide any Court or the Borrower with a copy of the Schedule A, and it does not even show up on the FDIC website. Again, in this case, US Bank will not be able to

OBJECTION TO PROOF OF CLAIM #3 BY U.S. BANK, N.A., AS LEGAL TITLE TRUSTEE

PAGE 1

produce the Schedule A and prove that this loan was included in what they bought from the FDIC.

Instead, they will have innumerable reasons why they should not have to show this document, which, if it existed, would be easily available. So, their refusal is proof that they do not have it. As the Supreme Court of California stated quite forcefully:

Nor is it correct that the borrower has no cognizable interest in the identity of the party enforcing his or her debt. Though the borrower is not entitled to object to an assignment of the promissory note, he or she is obligated to pay the debt, or suffer loss of the security, only to a person or entity that has actually been assigned the debt. (See *Cockerell v. Title Ins. & Trust Co., supra,* 42 Cal.2d at p. 292, 267 P.2d 16 [party claiming under an assignment must prove fact of assignment].) **The borrower owes money not to the world at large** but to a particular person or institution, and only the person or institution entitled to payment may enforce the debt by foreclosing on the security.

**It is no mere "procedural nicety," from a contractual point of view, to insist that only those with authority to foreclose on a borrower be permitted to do so**. (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title, supra,* 63 Duke L.J. at p. 650.) "Such a view fundamentally misunderstands the mortgage contract. The mortgage contract is not simply an agreement that the home may be sold upon a default on the loan. Instead, it is an agreement that if the homeowner defaults on the loan, *the mortgagee* may sell the property pursuant to the requisite legal procedure." (*Ibid.,* italics added and omitted.) The logic of defendants' no-prejudice argument implies that *anyone,* even a stranger to the debt, could declare a default and order a trustee's sale—and **the borrower would be left with no recourse because, after all, he or she owed the debt to** *someone,* **though not to the foreclosing entity. This would be an "odd result" indeed**. (*Reinagel, supra,* 735 F.3d at p. 225.) *Yvanova v. New Century Mortg. Corp.*, 62 Cal.4th 919, 937-38 (Cal. 2016) Emphasis added.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Walnut Creek, California.

Dated: September 22, 2020        S/Carol D. Meier
                               Carol D. Meier, Debtor

OBJECTION TO PROOF OF CLAIM #3 BY U.S. BANK, N.A., AS LEGAL TITLE TRUSTEE

I have prepared a time line of the Promissory Note and Deed of Trust, along with each error or omission that the different entities, such as Downey Savings, the FDIC, U.S. Bank, and U.S. Bank, as Trustee, have engaged in as to why the Promissory Note and/or Deed of Trust are unsecured and therefore unenforceable.

## 2006

### Downey Deed of Trust dated 4/6/06

Item B, reflects Carol Meier as a Married Woman, as her sole and separate property. Ms. Meier has been a single woman since 2005. Although not a material defect, this error keeps repeating in all the recorded documents that followed and is an example of the 15 year lack of auditing done on this loan. (See Exhibit 1.1)

### Downey Savings Adjustable Rate Note

Please notice, that there is plenty of room on the note for a future endorsement. Section 3-202 of New York's Uniform Commercial Code governs the "negotiation" of a negotiable instrument, which is the "transfer of an instrument in such form that the transferee becomes the holder." UCC § 3-202(1). "If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery." UCC § 3-202(1). "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." Wells Fargo Bank, NA v. Ostiguy, 127 A.D.3d 1375, 1376 (3rd Dep't 2015) (citations omitted). An allonge is an additional piece of paper "so firmly affixed [to the note] as to become a part thereof." NY UCC § 3-202(2); U.S. Bank National Assoc. v. Moulton (2nd Dep't January 8, 2020). **An allonge may be needed where "there is insufficient space on the [note] itself for the endorsements; as long as the allonge remains firmly affixed to the note, it becomes part of the note."** Id. (citation omitted).

On appeal, the Second Department reversed holding that plaintiff "failed to establish, prima facie, its status as a holder of the note at the time the action was

Case: 20-41288    Doc# 53    Filed: 09/23/20    Entered: 09/25/20 14:32:17    Page 3 of 28

commenced." Moulton, at page 2. In so doing, the Moulton Court found that "plaintiff failed to show that the note was properly endorsed and thus validly transferred to it." Moulton, at page 3 (citations omitted). The note in question was made payable to "Chevy Chase Bank, F.S.B." and not plaintiff. **The Court in strictly interpreting the UCC's requirements relating to allonges, found that plaintiff's "proof" of its standing was inadequate and stated:**

**In the record on appeal, the piece of paper immediately following the copy of the note contains only a purported endorsement specially endorsed to the plaintiff by Chevy Chase Bank, F.S.B. This page is not referred to at all in the affidavit of [the] servicer for the plaintiff (hereinafter the loan servicer), or any other evidence submitted in support of the plaintiff's motion.** Although the affirmation of the plaintiff's counsel refers to the document as an endorsement, and states that the note is specially endorsed to the plaintiff, the document does not meet the Uniform Commercial Code requirements necessary to constitute an allonge containing an endorsement, since no evidence was submitted to indicate that the paper containing the purported endorsement was so firmly affixed to the note so as to become a part thereof, as required under UCC 3-202(2**). The last page of the note indicates that it is page 5 of 5 and has sufficient white space on the page to fit an endorsement; the purported allonge, which is undated, contains no pagination or writing in any way to demonstrate its connection to the note or that it was firmly affixed thereto.** The affidavits of the plaintiff's counsel and the plaintiff's loan servicer, submitted in support of the plaintiff's motion, also fail to indicate that the purported allonge is connected to the note or that it was firmly affixed thereto. Thus, this so-called allonge fails to meet the legal requirements of an allonge (see UCC 3-202[2]), and is not connected to the note by any admissible evidence, and cannot serve as an evidentiary basis for summary. Since the plaintiff failed to establish, prima facie, its standing, summary judgment should have been denied. Moulton, at pages 3-4 (some citations omitted).

Court of Appeal, Fourth District, Division 2, California. Helen A. PRIBUS, Plaintiff and Respondent, v. Philip L. BUSH, Defendant and Appellant. Civ. 23473. 118 Cal.App.3d 1003 Decided: May 12, 1981
Section 3202(2) states, "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof." Thus, the code does not say whether or not such a paper, called

an "allonge," may be used when there is still room for an indorsement on the instrument itself. Nor has any reported California case dealt with this issue under the code.4 The code does, however, instruct us as to where to look for the law with which to resolve the issue. Section 1103 states that "(u)nless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant ... shall supplement its provisions," and that section's Uniform Commercial Code Comment notes "the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act." Therefore, since the Commercial Code has not addressed the issue, we decide the present case according to the rules on allonges of the law merchant.5

Although the cases are not unanimous, the majority view is that the law merchant permits the use of an allonge only when there is no longer room on the negotiable instrument itself to write an indorsement. (See generally Annot., Indorsement of Negotiable Instrument By Writing Not On Instrument Itself (1968) 19 A.L.R.3d 1297, 1301-1304; Annot., Indorsement of Bill or Note by Writing Not On Instrument Itself (1928) 56 A.L.R. 921, 924-926.) Typical of the majority position is Bishop v. Chase (1900) 156 Mo. 158, 56 S.W. 1080. There it was held that the general rule is that an instrument could be indorsed only by writing on the instrument itself, but that an exception to the rule allows the use of an attached paper "when the back of the instrument is so covered as to make it necessary." (Id., 156 Mo. 158, 56 S.W. at p. 1083.) Thus, the court invalidated an attempted indorsement by allonge when "there was plenty of room upon the back of the note to have made the indorsement, and the only excuse for not doing so was that it was more convenient to assign it on a separate paper." (Id., 156 Mo. 158, 56 S.W. at p. 1084.)6

Pribus v. Bush, 118 Cal.App.3d 1003, 1011 n. 11 (Cal. Ct. App. 1981) ("four Uniform Commercial Code cases that discuss the allonge issue which is presented here. Three of the cases state the majority position. ( Shepherd Mall St. Bank v. Johnson (Okla. 1979) 603 P.2d 1115, 1118; Tallahassee Bank Trust Company v. Raines (1972) 125 Ga. App. 263 [ 187 S.E.2d 320, 321]; James Talcott, Inc. v. Fred Ratowsky Associates, Inc., supra, 2 U.C.C.R.S. at p. 1137.) ")

(See Exhibit 1.2)

Case: 20-41288    Doc# 53    Filed: 09/23/20    Entered: 09/25/20 14:32:17    Page 5 of 28

**1st Independent Downey Savings Securitized Trust Audit completed by CFLA in 2011 for actions occurring in 2006**

Intent to Securitize said loan established. Findings show the loan was securitized in 2006. The texture of the note may have changed. Shows chain of title and document errors. Intent used here creates doubt on existence of debt and ownership.

(See Exhibit 1.3)

**2nd Independent Downey Saving Securitized Trust Audit, completed in 2014 for actions occurring in 2006**

Intent to Securitize said loan established

Shows the loan was securitized in 2006 and numerous chain of title and document errors. The texture of the note may have changed. Intent used here proves substantial doubt on existence of debt and ownership.

Regarding Greenwich Capital, DSLA 2006-AR2

PSA Pooling and Servicing Agreement

Cutoff date: August 1, 2006

Closing date: September 12, 2006

There is a lot of information to be gleaned or received with respect to the violation of said agreement, Begin at page 53

(See Exhibit 1.4-1.8)

**RBS Greenwich Capital Problems and Violations**

This report from the United States Dept. of Justice shows multiple violations including fraud during the years leading up to the 2008 meltdown.

The US Dept. of Justice in their report on Greenwich Financial stated that Greenwich Capital purchased the loans they were involved with.

There is evidence here that supports the probable sale of the loan years before Downey Savings failed.

https://www.justice.gov/opa/press-release/file/1087151/download

(See Exhibit 1.9)


**2008**

**Notice of Rescission of Downey Saving Deed of Trust**

Dated September 7, 2008; Sent to Downey. Downey never responded to it.

The Sherzers and their amicus, the Consumer Financial Protection Bureau (CFPB), argue that § 1635 "establishes a private, non-judicial mechanism for consumers to rescind mortgage loans by providing notice to their lenders." Br. of CFPB at 11. Under this view, an obligor who has not received material disclosures can exercise his right to rescission and rescind his loan agreement simply by sending written notice to the lender within the three-year period. After notice has been sent, the lender and the borrower incur certain obligations under § 1635(b). Specifically, the lender must return any money or property that it received as down payment, and must take any actions necessary to show that it no longer has a security interest in the property. See15 U.S.C. § 1635(b). If the lender does not comply with § 1635(b)—because, for example, it contends that all relevant disclosures have been made such that the obligor had no right to rescind the agreement—the obligor may file an action to recover the money and property owed and to quiet title. Under this view, rescission of the loan agreement occurs when a valid notice of rescission is sent, not when a court enters an order enforcing the obligor's rights. The subsequent legal action would simply determine whether a valid rescission had occurred, and, if so, the court would enforce the respective obligations of the parties. This interpretation of § 1635 accords with the Eleventh Circuit's description of the rescission process in Williams v. Homestake Mortgage Co., 968 F.2d 1137, 1139–40 (11th Cir.1992) (explaining that rescission occurs automatically upon notice), and would lead to the same result reached by the Fourth Circuit in Gilbert v. Residential Funding LLC, 678 F.3d 271, 277–78 (4th Cir.2012) (holding that a consumer need only send notice of rescission within three years of the closing date).  Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 257 (3d Cir. 2013)

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.15 U.S.C. § 1635(b) (emphasis added). When an obligor exercises his right to rescind as defined in § 1635(a)—that is, as Regulation Z states, when he notifies the creditor by mail, telegram, or other means of written communication that he is rescinding—he is free of any liability for payments, the security interest "becomes void," and the creditor incurs an obligation to return money or

property given. As with § 1635(a), there is no mention of filing a suit at law or equity. Rather, § 1635(b) states that the creditor must return money or property "[w]ithin 20 days after receipt of a notice of rescission "—not within twenty days of a court order stating that the obligor is entitled to rescind. See id. Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 258-59 (3d Cir. 2013)
(See Exhibit 2.1)

**No one paid for the debt.** Downey Savings and Loan failed on 11/21/08
FDIC became receiver of Downey Savings and Loan on 11/21/08
Downey was shut down by the OTC and the US Marshall's office seized their assets. **No one paid Downey Savings any money for the Meier loan. The Loan Sale Agreement refers to a Schedule A that allegedly lists loans that were part of U.S > Bank's acquisition, but there is no Schedule A attached, nor was there ever.** FDIC is a government agency, not an original party of interest or an assigned party of interest in the loan. (FDIC is a receiver, its job is to "Section 11(c) of the FDI Act", the FDIC is appointed as receiver by a federal or state chartering authority in order to liquidate or wind up the affairs of a failed depository institution (an "institution") or as conservator to preserve the going concern value of the institution.
https://www.fdic.gov/about/strategic-plans/strategic/receivership.html

**Purchase and Assumption Agreement between FDIC and US Bank National Association**
As clearly stated in Page 13, Item 3.5 of the Purchase and Assumption Agreement, **US Bank did not purchase any single family loans.** The Purchase and Assumption agreement does not reference anywhere in the document the existence of the LSA agreement. There is no reference stating the relationship between the two agreements, nor does it offer any explanation of their purpose for having two agreements and/or their relationship. These two separate agreements contradict each other. Cross referencing clarifies intent, without it, intention to purchase or assign through the loss share agreement is not established.
(See Exhibit 2.2)

**Loan Sale Agreement (AKA LSA)**
**Single Family Loss Share Version (See next page)**

Case: 20-41288    Doc# 53    Filed: 09/23/20    Entered: 09/25/20 14:32:17    Page 8 of 28

This is a different transaction agreement between the FDIC and US Bank that was entered into concurrently on 11/21/08 along with the Purchase and Assumption Agreement.

An LSA document with a **blank Schedule A** was submitted to the court in 2017. At least 3 copies of the LSA document were sent to Ms. Meier at different times, each document a little different and always with a blank Schedule A.

Without Schedule A, it is impossible for a Court to determine that Meier loan was part of the sale. There is no presumption that a particular loan was or was not a part of the Loan Sale Agreement, as it is not proven that Downey still owned the Meier loan after the securitization had occurred.

The LSA agreement does not reference anywhere in the document the existence of the Purchase and Assumption agreement, nor do they reference or offer an explanation of having two agreements and/or their relationship. Cross referencing clarifies intent, without it, intention to purchase or assign through the loss share agreement is not established. More doubt.

The LSA agreement states that US Bank **purchased loans listed on Schedule A for only $10.00**; please notice in this exhibit that **Schedule A is blank**. **No FDIC wet stamp original or certified original copy of the schedule A list of loans has ever been produced.** The schedule A list of loans does not prove that said loan was a portfolio held loan. The FDIC as receiver cannot prove it either or if they can, they must.

## Section 2.4

Adjustment of purchase price. How can you adjust a pro forma purchase price of $10.00?

## Section 3.3

States that said **loans were transferred on a service-related basis.**

In this section US Bank is named as a servicer only and not the owner of the loan. The LSA agreement says that the loans were sold to US Bank for $10.00 but then says that the US Bank is only the servicer. Both are on the same document. No explanation or reference stated. There is no reference or cross reference on the LSA explaining ownership of the loans and the servicing of the loans. Contradiction of facts and intent.

One part says US Bank owns the loans, the other says the loans were transferred on a service-related basis only. US Bank National Association is not a servicer. US Bank Home Mortgage, a brand of US Bancorp is. US Bank Home Mortgage commenced with servicing said loan, however, no notice of transfer of servicing from US Bank National Association to US Bank Home Mortgage was received.

**Section 3.5 page 13 of the LSA**

The FDIC instructs the buyer at their expense to record the appropriate documents with the county of record expediently. US Bank severely delayed the recordation of this document. The Assignment was created by US Bank NA, and filed 3 ½ years later with an effective date of 11/21/08. (No debt belonging to US Bank NA existed on 11/21/08, only an agreement to purchase. The Assignment document contains other errors (See 2012 for further explanation) In addition, the dates on the assignment are wrong.

**Section 4.2 of the LSA**

FDIC states in the LSA that US Bank can do what they want with the paperwork. The loan is for US Bank for their own benefit and not for the benefit of any other beneficiary.

**Article V Loss sharing notices**

Successors and Assigns; Specific Performance
Section 42 Purchaser liquidation of remaining shared loss loans. They need receiver's permission (FDIC) to sell from receiver. No affidavit of permission has ever been produced.

**Section 6.2 of Exhibit 2 of the LSA**

The FDIC must give their approval to transfer the servicing. US Bank transferred servicing from US Bank NA to US Bank Home Mortgage. Then the servicing was transferred to Fay Servicing and then to Rushmore Loan Mgmt. No FDIC approval has been provided.

**Statement relating to findings within the LSA**

The Loan sale agreement between US Bank and the FDIC was signed on 11/21/08 but the legal assignment didn't happen until April 17, 2009. The debt (if proven to exist) did not transfer to US Bank NA on 11/21/08. That means for 4 ½ months the debt (if it was not previously sold in the securitization) was still owned by Downey Savings and abandoned with no legal ownership. Meaning the debt did not exist. Even If there was proven intention to transfer the Schedule A loans on 11/21/08, that intention was never noted on any of the 11/21/08 sale documents as a reference or confirmatory remark. Transfer of loans was said to be completed in April 2009, but what loans were transferred? Schedule A was and is blank. The

Page **8** of 26

documents related to the transfer contain contradictions and the FDIC delayed the assignment until April 17, 2009. There is no affidavit from 2008 and the FDIC, Steven Carr (receiver) or anyone else stating an intent to transfer or an explanation for the delay.

No recorded assignment was done at any time in November or December of 2008 or anytime in 2009.

While through their receivership, the FDIC has power that allows them to control a debt, that power does not make them the holder in due course on a debt that has not been audited and proven to exist or a loan that is received without paying consideration for it.

(See Exhibit 2.3)

**The Loan Sale Agreement (LSA), Single Family Loss Share Version is based on the Uniform Commercial Code for the state of New York.**
Downey Savings, the house and the property are located in **California.** U.S. Bank is located in Minneapolis, MN and the FDIC is located in Washington, D.C. There is no entity involved in this transaction in New York, and no reason why New York law would or could apply.

**Downey Payment Notice and Loan Statement**
Dated: 12/12/08, Paid to Downey Savings on 1/15/09
Downey Savings was closed by the OTC on 11/21/08
This statement clearly infers that Downey Savings was still in business. The statements reflect Downey Savings because the loans had not yet been assigned and transferred. No notice of US Banks purchase of Downey's operations and branches was received by Ms. Meier anytime in 2008.
(See Exhibit 2.4)

**2009**

**Downey Letter – Payment Notice**
Dated February 17, 2009
This statement shows Downey Savings (DSLA) still in business, not US Bank. Payment statements, checks and correspondences had Downey Savings letter head on them. The assignment and transfer of loans by the FDIC was not yet

Page **9** of 26

executed. No legal ownership of debt. US Bank could not claim ownership until the FDIC assignment had been executed. No documents from US Bank or the FDIC stating intention to transfer. No communication, written or otherwise sent to Ms. Meier to inform her of the initiated purchase or transfer.
(See Exhibit 3.1)

**Downey Payment Receipt**
Dated 3/16/09
This payment was made to Downey Savings and Loan, not US Bank
Shows Downey as owner, not US Bank. Payment statements and all correspondences had Downey Savings letter head on them. The assignment and transfer of loans by the FDIC hadn't happened yet.
(See Exhibit 3.2)

**FDIC Assignment, dated April 20, 2009, signed April 17, 2009** re-examine
This document was signed 4 ½ months after Downey Savings failed.
FDIC Assignment (Execution Version)
There is no notary stamp on document
(See Exhibit 3.3)

**US Bank Transfer of Servicing Letter**
**Dated: June 15, 2009**
The US Bank Transfer of Servicing letter states that Downey is now a part of US Bank. The letter head says US Bank Home Mortgage (Servicer). Nowhere on the document does it mention US Bank National Association. This document strongly indicates a merger or partnership and that Downey is still the beneficiary and US Bank the new servicer. False and Misleading. Downey failed on 11/21/08 not 2009. No explanation or reference on the letter to let the homeowner know the truth about the relationship between Downey and US Bank and the fact that Downey Savings had failed and went out of business. No proof of ownership of the loan was provided. At the time this letter was sent, John Amador whose signature is at the bottom of the letter was an employee of US Bank not Downey Savings. He used to work for Downey as a V.P. before the bank failed in 2008. He fraudulently signed and represented himself as still working for Downey Savings. He was hired by US Bank after Downey failed.
(See Exhibit 3.4)

**US Bank/Downey Loan Joint payment Statement, not individually dated but Attached to Transfer of Servicing dated June 15, 2009**

The statement still shows Downey Loan number #9042236026 inferring that US Bank is a servicer and that Downey Savings is still beneficiary.

Downey Savings and US Bank are both listed on the statement. Who is who? Downey Savings was gone.

By continuing to use the Downey Savings Loan number, There is an illusion that the loans were still owned by Downey Savings or that there was a merger or partnership. It is normal and customary for a new servicer to assign a new loan account number. Payments were now instructed to be made to US Bank Home Mortgage (servicer) which is a different company from US Bank National Association. It is also the name listed on US Bank's/Downey Savings transfer of servicing letter. There is no mention of US Bank National Association. I believe US Bank Home Mortgage is a subsidiary of US Bancorp. US Bank N.A was given the servicing. US Bank Home Mortgage was not. According to Section 6.2 US Bank needed permission from the FDIC to transfer the servicing. No evidence of the permission to transfer has ever been provided.

(See Exhibit 3.5)

**Audit Report of the Office of Inspector General, US Dept. of Treasury**

June 15, 2009

This very complete audit shows Downey's stressed financial condition and the reasons for their failure in 2008. The audit discusses the errors made by the OTC and Downey's continued concentration of subprime loans. The Audit shows the timeline of problems and errors that plagued the bank and the OTC's delays with issuing formal warnings and their delay in the handling of the shutdown. Nowhere in this comprehensive audit of Downey Savings and Loan were the loans examined to determine their validity and value.

As such, there is inconclusive proof that the purported loan and loan documents were still owned by Downey and still held in their portfolio, and the undisputable fact that neither Downey nor the FDIC could produce a Schedule A proves that neither party had any idea what was being transferred to US Bank N.A.

(See Exhibit 3.6)

**Affidavit of FDIC representative Steven Carr, dated October 28, 2009 Signed 5 months later after the Assignment. Invalid.**

Under Penalty of Perjury the signed Affidavit of FDIC representative Steven Carr, dated October 28, 2009 states that pursuant to the Purchase and Assumption Agreement, US Bank became owner of the Downey Savings Loans on 11/21/08 Mr. Carr perjured himself, because in **the Purchase and Assumption Agreement,** It clearly states that **US Bank NA did not purchase any single family loans. The FDIC didn't transfer and assign the loans until April 17, 2009. The transfer was not completed on 11/21/08**

**Affidavit of the Federal Deposit Insurance Corporation 2012**
**No. 3** of said document gives the FDIC authority to transfer any asset or liability of Downey Savings. Yes, as long as the asset or liability can be proven to exist. The Deed of Trust is invalid. The loan was securitized. No original accounting records from origination of the loan in 2006 ever been brought forth. No original endorsed Promissory Note has ever been brought forth in 10 years. No proof that a debt existed as of 11/21/08 for the FDIC to transfer.
**No. 4**
Pursuant to the terms and conditions of the Purchase and Assumption Agreement between the FDIC and US Bank N.A., US Bank acquired all loans and loan commitments, of Downey Savings.
The FDIC/ Purchase and Assumption Agreement clearly states in Page 13, Section **3.5 States that US Bank did not purchase any Single Family Loans.**
**No. 5**
States, as of November 21, 2008 US Bank became the owner of the loans and the loan commitments. In order for US Bank to become the owner of any loan, sufficient proof must exist to show that a debt existed in the first place and that reasonable consideration was paid for it. Neither proof of debt or reasonable consideration for that debt has ever been produced and made available for inspection. The loan would also have to have been described in Schedule A, which as stated above, was blank. The blank Schedule A was later submitted to the California State Superior Court in Meier vs. US Bank 2017
(See Exhibit 3.7)

**North American Title Insurance Company Title Guarantee**
Dated: December 7, 2009, 13 months after Downey's failure and the FDIC assignment. 13 months after Downey's failure.
Reflects Carol Meier, a married woman, as her sole and separate property.
Carol Meier was divorced in 2005.

Page **12** of **26**

States Downey Savings as the legal Beneficiary. Even the Title Company did not audit the documents.
(See Exhibit 3.8)

## 2010

### Notice of Default recorded on April 21, 2010

This document references the description in the DOT, that Carol Meier, a married woman. Ms. Meier was not married in 2010

US Bank initiated foreclosure proceeding before the assignment was written and also recorded. Said assignment was prepared and recorded in 2012, over 3 years after the FDIC April 17, 2009 assignment of interests.

US Bank continued its attempt to foreclose. (See following attempts to foreclose before the recorded assignment took place in 2012)

The Notice of Default shows a chicken scratch for a signature with no name or job title stated anywhere to identify the signor.

A natural person must sign each recorded document in the foreclosure process. Documents not bearing signatures of natural persons are invalid. No proof of who or what signed this document?

In addition, The Notice of Default was filed before the Corporation Assignment Deed of Trust per the Pooling and Servicing Agreement filed with the US Securities and Exchange Commission regarding DSLA Mortgage Loan Trust 2006-Ar2. This filing of Beneficial Interest of the Deed of Trust must have been done when the note was sold to the Trust referenced above originally per the Securities and Exchange Commission filing in the 424b5 Prospectus as required by the SEC This was not done before the Cut-Off Date.
(See Exhibit 4.1)

### FCI Lender Services Notice of Trustee Sale 7/22/10

This document references the description in the DOT, that Carol Meier, a married woman. Ms. Meier was not married in 2010

US Bank continued its attempt to foreclose with an _invalid_ 2009 FDIC assignment in place and before the recorded assignment took place. No recorded assignment in county records anytime in 2010 or on 1/18/12.
(See Exhibits 4.2)

Page **13** of **26**

## California Civil Code 2923.6

This law went into effect in 2008. Ms. Meier applied numerous times from 2010-present for a loan modification with US Bank. They were all denied.

## 2011

### Complaint, Case No. C11-02883
### Meier vs. Deutsche Bank

This case raises Issues that raise doubt on ownership of debt and evidence the note was sold. See Complaint.
(See Exhibit 5.1)

### Downey Savings CFLA Securitization Audit

Shows clear <u>intent</u> to securitize Loan #9042236026. CFLA findings state that the purported loan was securitized in 2006 before Downey Savings failed in 2008 and before the FDIC stepped in as receiver.
(See 2006 Exhibit 1.3)

### Chapter 13 US Bank NA Proof of Claim filed on April 29, 2011

No assignment of the Deed of Trust was submitted with the proof of claim.
US Bank submitted a Copy of Un-indorsed Promissory Note and without an Allonge. The Allonge must always be affixed to the note, never detached.
An invalid Allonge was submitted in a 2017 court case. The Allonge did not exist in 2011 because US Bank did not have power of attorney to create one. Without an indorsed note and also a missing Allonge. US Bank's proof of claim is invalid.
It is clear that Judge Effremsky did not properly examine the proof of claim as he missed this critical component and also the missing assignment.
(See Exhibit 5.2)

### Relevant Case

Kemp vs. Countrywide 440 B.R. 624 (2010)
An Allonge; a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for, when there is no room on the instrument itself.
An Allonge can bind one party to pay another party that was not involved in its creation.
The Seller must draw the Allonge.

Page **14** of **26**

Selling Guide, published 12/19/17
B8-3-04 Note on Endorsement (2/23/2016)

**Chapter 13 loan payments**
US Bank correspondence states that no payments have been received on this loan since early 2010. That is correct.

However, in 2011, Hon. Judge Effremsky ordered payments to be made through the court. US Bank received 4 payments totaling $8184.44 but are listed on the banks account transcripts as unapplied payments. Since 2011, US Bank NA has kept these payments for their own use. US Bank sold the purported loan in January 2019 and as such, these payments must now be returned to Ms. Meier.

See amounts, $2784.44 written on 8/10/11, $1800.00 made on 9/7/11, $1800.00 made on 10/3/11, and $1800.00 made on 11/28/11.

**Confirmation of above Loan Payments and history from 2006-2012 received from US Bank**

**No. 4945 Page 5**
A report generated 09/28/12 by US Bank rep. Amanda Ramirez

In US Banks proof of claim submitted to the Federal Bankruptcy Court, the attached transcript lists all 4 payments as received but not applied. US Bank has had use of these funds for their own benefit since 2011. Misuse of funds.
(See Exhibit 5.3)


**Chapter 13 Loan Modification and**
**REST REPORT, Affordable Mortgage Payment Analysis**
This is the document used and approved by the US Treasury that was submitted to US Bank loss mitigation and to the Chapter 13 bankruptcy court.

This is the analysis used to qualify a homeowner for a loan modification.

The report clearly shows that Carol Meier qualified for a loan modification.

In court, Judge Effremsky asked US Bank attorneys Prober & Rafael (attorneys for US Bank) if they were going to grant Ms. Meier the loan modification. They said no to the Judge. The Judge then granted US Bank relief from stay. US Bank never foreclosed. Why not? US Bank was given the green light. There was nothing standing in their way. If US Bank was the holder in due course, held the original wet stamp note, paid reasonable consideration for the alleged debt and loan, held a perfected title, why not foreclose?
(See Exhibit 5.4)

**Limited Power of Attorney**
(See Exhibit 5.5)

**Tarp bailout and HAMP program 2011**

A class action lawsuit was filed against US Bank on 2/7/2011 for failure to offer permanent loan modifications to eligible homeowners participating in good faith in the HAMP program despite entering into agreements and accepting Federal funds to participate in the program. (See dannlaw.wordpress.com/2011/02/08/class-action)

**2012**

**Assignment of Deed of Trust**

Said assignment contains numerous errors and omissions.

The US Bank assignment, created by and for US Bank was recorded on October 4, 2012, 3 ½ years late but made effective on 11/21/08.

The Assignment was notarized in Wisconsin. In California, It is illegal for a notary to notarize a backdated document Notary deliberately falsified information in the acknowledgment certificate, the Notary faces a maximum civil penalty of up to $10,000, and is considered to have committed forgery (Civil Code 1189[a][4] and (Penal Code 470[d]), a crime punishable by up to a year in prison (Penal Code 473[a]). If it is legal in Wisconsin, then that would be a good reason to have a California document relating to a property located in California taken to Wisconsin for notarization.

The FDIC delayed 2 years since their assignment of loans in 2009 to grant US Bank limited power of attorney. The limited Power of Attorney is dated Nov 30, 2011 but recorded on Nov 8, 2011, 3 weeks before the power of attorney was granted. This error is present on both pages. The dates as you can see are clearly wrong.

The debt was not assigned to US Bank on that date. There is no reference stated anywhere on the document that it is in fact a confirmatory assignment documenting a bona fide assignment had taken place on 11/21/08. (See Juarez vs. Select Portfolio) Nowhere does the document even mention the phrase "Confirmatory Assignment." Neither does it establish that it confirms a previous assignment or, for that matter, even make any reference to a previous assignment in its body.

The assignment was created by US Bank solely for US Bank's benefit on May 23, 2012 and delayed by recording it 5 months later.

(See Exhibit 6.1)

Case: 20-41288   Doc# 53   Filed: 09/23/20   Entered: 09/25/20 14:32:17   Page 18 of 28

**Juarez vs. Select Portfolio** 708 F.3d 269 (1st Cir. 2013)
Court ruling on backdated assignments.
(See Exhibit 6.2)

**Koufos v. U.S. Bank ex rel. Holders of the CFSB Mortg. Pass-Through
Certificates Series 2005-CF1** 939 F. Supp. 2d 40 (D. Mass. 2013)
Follow up case to Juarez vs Select Portfolio
(See Exhibit 6.3)

The permission to record the assignment wasn't given to US Bank until 2 years
after the the FDIC assigned the loans in 2009 and almost a year after the 2011
Limited Power of Attorney. More delays
(See FDIC assignment Exhibit 2009)
(See power of attorney 2011 exhibit 5.5)

**Debra Weise, US Bank VP, Signatures are different. Robo Signature?**
She was attorney in fact
One or both of her signatures appears to be a forgery. It is possible, that one of
them is authentic, but which one?
(See Exhibit 6.4)

**Independent Foreclosure review, November 30, 2012**
In April 2011, federal banking regulators found guilty and issued enforcement
orders against 14 large mortgage servicers for deficient mortgage servicing and
foreclosure practices. US Bank was one of those found guilty of multiple loan
servicing and foreclosure violations. The orders required those servicers to retain
independent consultants to conduct a comprehensive review of foreclosures that
were in process or completed in 2009 or 2010 to identify financial injury to
borrowers that resulted from errors, misrepresentations, and other deficiencies in
the foreclosure process. **US Bank never completed the loan auditing.**
Ms. Meier requested that Loan #9042236026 be included in the review.  Her
request was granted.
**During the Independent foreclosure review, there was no recorded assignment.**
In June 21, 2012 the Financial Remediation Framework used in the Independent
Foreclosure Review; Items pertaining to US Bank
Two applicable categories and errors that were in process of being audited
include: **Loan Modification Application and No Standing to Foreclose**

A condition of the settlement reached between US Bank and the Federal Government was that they were to implement a loan modification program for the loans and people that were part of the Independent Foreclosure Review Program. US Bank implemented a modification program, however, Ms. Meier applied numerous times over the last 10 years and was repeatedly turned down. She indisputably proved in court in 2011 that she qualified.

**Dispute Letter sent to FCI Lender Services regarding the 2010 Notice of Default and Securitization information**
There was no response received from FCI Lender Services or US Bank
(See Exhibit 6.5)

**FCI Lender Services Trustee Sale Letter**
No Response.
(See Exhibit 6.6)

**2013**

**Substitution of Trustee**
Filed untimely. Law states that this document must be recorded before the Notice of Trustee Sale.
(See Exhibit 7.1)

**2014**

**QWR and Debt Validation**
This document was sent certified mail to Old Republic Default Management Services 5/9/14
No response from Old Republic to receipt of said documents.
No further response received.
See default provisions under this Qualified Written (RESPA) Requests
(See Exhibit 8.1)

**Securitization Transaction Diagram**
This one page exhibit is from the more comprehensive loan audit prepared by 3rd party forensic loan auditor Lawrence Asuncion as listed in 2006 of this document. This diagram shows the securitization path of said loan.
(See Exhibit 8.2)

**Securitization Audit completed**
By Lawrence Asuncion, Loan Auditor
<u>Intent</u> to Securitize said loan established and evidence that supports loan was sold years before Downey Bank failure. Mr. Asuncion findings show the Securitization of Downey Savings and Loan #9042236026 into the 2006-AR2 Trust and multiple errors found in recorded documents and broken Chain of Title.
(See Exhibit located in 2006)

**2015**

**Substitution of Trustee**
Recording requested by Title 365. I do not know them. No notice was sent to me bringing them in.
(See Exhibit 9.1)

**Notice of Default**
The attached Declaration of Compliance says that no contact was required because the individual did not meet the definition of "borrower"
If they did not consider Ms. Meier a borrower then what was she?
This document lists Carol Meier, a married woman. Error. Ms Meier was not married in 2006 and is not married now.
(See Exhibit 9.2)

**Henry Stuckey, Real Estate Investigator findings**
From May 23, 2015 meeting notes with Henry Stuckey.
In 2015, Mr. Stuckey discovered that US Bank received $1.9 million from the FDIC for mortgage insurance relating to the Downey Loans. Mr. Stuckey believed there was a Violation of "Foreclosure Act of 2009" and referenced Civil Code section 2924.

Mr. Stuckey believed that US Bank received compensation for said loan from the FDIC before US Bank put the loan into a pool of loans that were subsequently sold into the 2016 Truman Title Trust.

Mr. Stuckey also discovered illegalities as to why the title documents were filed in Dallas, TX instead of California. He said it was a cover up and an attempt to hide information.

Mr. Stuckey also discovered that the Assignment was not done correctly. He believes there may still be a hidden Deed of Trust on record via "Downey Saving Investments"

Mr. Stuckey found that US Bank was foreclosing on properties in California and sending the paperwork to Dallas, Texas to process. Mr Stuckey concluded that this was an illegal running scam to keep with the process from the 61 Rudgear Drive property, while moving the $1.9 million, which keeps the money off the books and out of site.

Mr. Stuckey filed documentation from the $1.9 million issue and transaction with the US Treasury office/IRA in Federal Office is in Dallas, Texas/
(See Exhibit 9.3)


**2017**


**Meier vs. US Bank et al. Contra Costa Superior Case No: MSC17-01131**
There were a number of issues raised in this case.
US Bank in their motion for judicial notice on the pleading that it was FDIC's intention to assign the debt on 11/21/08. Their intention they claim was based solely off of the 2012 recorded assignment. There was no mention of the 2009 FDIC assignment. There was no affidavit from the FDIC included, that stated intent to assign the loans. The FDIC delayed the assignment for 4 ½ months instead of executing said assignment or an affidavit of intent, concurrently with the other Purchase and Assumption document on the closing date. Aside from the question of intent, the undisputed fact remains, that there were two different purchase agreements between the FDIC and US Bank National Association with many contradictions.
(See Exhibit 10.1)

Case: 20-41288   Doc# 53   Filed: 09/23/20   Entered: 09/25/20 14:32:17   Page 22 of 28

## Allonge To Note

In the 2017 case, the Allonge US Bank submitted to the court was not for the correct Promissory Note. The actual date of the Note is March 30, 2006 not April 2006

The Allonge must always be affixed to the note, never detached.

The Allonge is undated.

An Allonge must be signed by an officer of the corporation. Karen Canon was not an officer of the bank, she was attorney-in-fact.

A seller must draw the Allonge. This was not done.

According to the Forensic Loan audit done in 2014, it was determined that the Allonge was created sometime in 2010-2012

In the Allonge description it states under Limited Power of Attorney dated September 29, 2010, recorded September 29, 2010. Where is the limited POA document? This document has never been produced.

The failed bank DSLA under receivership by the FDIC, was acquired by US bank in November 21, 2008. No reference to the Allonge on the Promissory Note. No affidavit has ever been produced to explain why an Allonge was used since there is plenty of room on the note itself.

(See Exhibit 10.2)

## Recommendations of Discovery Facilitator, Meier vs. US Bank et al.

October 11, 2017

US Bank did not properly respond to Plaintiffs discovery requests.

In the 2017 litigation, the court assigned discovery facilitator stated that Defendant (US Bank) is required to provide proper response to the requests and produce any responsive documents, if any exist within 15 days of the date of the recommendations. US Bank once again partially responded. The discovery was incomplete. Result: No validation of Debt was proven

(See Exhibit 10.3)

## 2018

## Package sent to Congressman's Office

Congressman Mark DeSaulniers requested a package of core loan and legal documents sent to him. Congressman DeSaulnier sent the first set of copies to

Page **21** of **26**

California State Attorney General Xavierra. This updated loan analysis packet is currently being submitted.
(See Exhibit 11.1)

**Dispute Letter from Yesk Law to Quality Loan, March 7**
Quality Loan never responded.
(See Exhibit 11.2)

## US Bank Misrepresentation to US Congressmen and Foreclosure Action, June 28, 2018

Congressman Mark DeSaulnier's office intervened on my behalf and asked US Bank to postpone the Trustee Sale in order to allow enough time for parties to work out a settlement arrangement. US Bank represented in an email to the Congressman that the sale had been postponed.

US Bank proceeded with the sale anyway and foreclosed. US Bank Attorneys Locke Lord were contacted, Congressmen DeSaulnier's office was contacted. US Bank then rescinded the sale.
(See Exhibit 11.3)

**2019**

**Dispute Letter sent to Fay Servicing February 12, 2019**
No Response to Mr. Yesk's letter. No Validation of Debt.
(See Exhibit 12.1)

**Chapter 11 US Bank Proof of Claim filed in January 2019**
US Bank NA Proof of Claim reflects all the same errors and chain of title defects as stated in this document. The defective Allonge was submitted in this case along with the Un-endorsed Note and the invalid Assignment.
Invalid copy of Assignment containing all the defects as previously stated herein.
No affidavit of permission from the FDIC per the LSA from the FDIC to sell the loan or transfer the servicing per section?
Transcript of account activity related to said loan attached. Please notice that the 4 payments made through the Federal bankruptcy court were never applied to

the account. US Bank kept funds that were designated for loan account #9042236026 since 2011. Misuse.

**Section: Mortgage Proof of Claim Attachment: Addendum**
**POC special language:**
States: The promissory note is either made payable to Creditor or has been duly indorsed. Neither was done.
States: Creditor, has possession of the note. In court or out of court, only copies of the unendorsed note have ever been produced
States: Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust. For the reasons and defects stated herein, US Bank was never any of the three.
**Transfer of Claim within the United States Bankruptcy Court, Chapter 11 proceedings, from US Bank National Association to US Bank as Trustee for the 2016 Truman Title Trust**
Proof of Claim reflects all the same chain of title defects as stated in this document. The defective and invalid Allonge was submitted in this case along with the Un-endorsed Note.
Invalid copy of Assignment containing all the defects as previously stated herein.
No affidavit of permission from the FDIC per the LSA from the FDIC to sell the loan or transfer the servicing.
(See Exhibit 12.2)

**Appraisal sent to Fay Servicing**
61 Rudgear Drive Appraisal June 13, 2019 completed by independent 3rd party Herwood and Associates.
Lists the appraised home value at $362,000 Appraiser determined the home to be livable but a tear down.
Requested through the account mgr. to have Fay send out their own appraiser since Fay's BPO came in at $965, 0000
Fay Servicing did not acknowledge or respond to the independent appraisal and would not send out their own appraiser to investigate the large discrepancy.
(See Exhibit 12.3)

**Email from Jackie Fu, former attorney for Locke Lord**
Locke Lord (Attorneys for US Bank) state that US Bancorp does not own and has never owned any loans. Ms. Fu was referring to the parent company. However,

Page **23** of **26**

**U.S. Bank (stylized as US Bancorp)** is an American bank holding company based in Minneapolis, Minnesota, and incorporated in Delaware. As the parent company of U.S. Bank N.A. the two companies are directly connected and financially benefit and from each other.


**Dispute Letter to Fay Servicing**
Emailed in on 12/12/2019
No Response from Fay Servicing. Therefore no proof of validation of debt
(See Exhibit 12.4)


**2020**


**FAY Servicing Dispute Letter and QWR**
Sent Fay Servicing a 2nd QWR. Fay legal Dept responded within the required 5 period saying I would receive a response from them within 30 days. No further response was received.
(See Exhibit 13.1)

**Notice of Default January 24, 2020**
Notice that Attorney Lender Services was <u>not</u> the Trustee in July 2019. Attachment also states that the Beneficiary contacted me. Ms. Meier has never been contacted by the Beneficiary. On May 20, 2020, Ms. Meier sent by certified mail, a written request and asked for a copy of that letter. **Rushmore never responded.** There is also an old and no longer active loan number listed.
(See Exhibit 13.2)

**Email sent to Karen Talafus, Attorney Lender Services, Trustee**
On 1/31/20, Ms. Talafus was sent a copy of the dispute letter that was sent to Fay on 12/12/19. No response was ever received from Attorney Lender Services or Fay Servicing.
(See Exhibit 13.3)


## Rushmore Loan Management Services, (New Servicer) Recent Document, Procedural and Filing Errors

**Notice of Trustee Sale May 4, 2020**
Notice of sale was recorded and sent before the Notice of Assignment of Transfer of Servicing. The Assignment was created later and then backdated. Nothing was noted on the Notice of Trustee Sale to confirm said assignment. No introduction letter and packet received. No single point of contact assigned. No loan statement received. Notice of Sale rushed. Filed 3 days after their stated "made effective on date of May 1. Although not mandatory as of May 1st, California was still under shelter in place orders by the State of California. This document lists a completely different account number.
(See Exhibit 13.4)

**Rushmore Correspondence dated May 7, 2020**
Sent to the wrong address.
This letter offers loss mitigation options. I called loss mitigation around the first part of June and gave them the correct address which they updated. I have since received 2 more copies of that same letter.
(See Exhibit 13.5)

**Rushmore Loan Statement dated 5/12/20**
Sent to wrong address
(See Exhibit 13.6)

**Notice of Assignment of Transfer of Servicing.**
Sent to the wrong address and was backdated. No reference or remarks stated on transfer letter to say that the notice was confirmatory of an assignment that had already happened. Just a "made effective on" remark.
No affidavit included from the FDIC approving the transfer of servicing.
Per the LSA, Exhibit 2, Section 6.2, US Bank needed permission from the FDIC to transfer any servicing of the loan.
(See Exhibit 13.7)

**Dispute Letter sent to Rushmore May 11, 2020**
(See Exhibit 13.8)

**Dispute letter sent to Attorney Lender Services on May 20, 2020**
**No Response**
(See Exhibit 13.9)

**Response Letter from Rushmore dated 5/29/20**

Single point of contact finally assigned. 29 days after transfer date of May 1, 2020 only because Ms. Meier asked for it. The letter states that the foreclosure was initiated in December 2019. The Notice of Default was filed January 24, 2010 by Fay Servicing, with a Fay account number and not by Rushmore. Rushmore did not file the Notice of Default and did not take over the servicing until May 1, 2020. Rushmore piggy backed on Fay's Notice of Default as an excuse not to comply with the states "shelter in place" directives and then rushed filing the Notice of Trustee Sale immediately after the state protections expired and before the Assignment of Transfer of Servicing was completed. Their "made effective date of May 1" as listed on their notice is invalid because it is illegal in the State of California to backdate an assignment.

And according the LSA agreement that should have been transferred to the 2016 Truman Title Trust, it clearly states in **Section 6.2 of Exhibit 2 of the LSA:**

The FDIC must give their approval to transfer the servicing. US Bank transferred servicing from US Bank NA to US Bank Home Mortgage. Then the servicing was transferred to Fay Servicing and then to Rushmore Loan Mgmt. No written FDIC approval has ever provided between any of the transfers since the LSA was entered into in 2008.

(See Exhibit 13.10)

(See LSA Exhibit 2.3 listed in 2008)


**Corrected Notice of Assignment and Transfer of Servicing**
**Dated 6/3/20**

Nothing else had changed in the document. No reference or remarks stated on transfer letter to say that the notice was confirmatory of an assignment that had already happened. Just a "made effective on" remark.

No affidavit included from the FDIC approving the transfer of servicing.

Per the LSA, Exhibit 2, Section 6.2, US Bank needed permission from the FDIC to transfer any servicing of the loan.

(See Exhibit 13.11)